1  BILAL A. ESSAYLI
   First Assistant United States Attorney
2  ALEXANDER SWAB
   Assistant United States Attorney
3  Acting Chief, Criminal Division
   PETER DAHLQUIS
4  Assistant United States Attorney
   Chief, Riverside Office
5  COURTNEY N. WILLIAMS (Cal. Bar No. 339301)
   Assistant United States Attorney
6       3403 Tenth Street, Suite 200
        Riverside, California 92555
7       Telephone: (951) 368-1473
        Facsimile: (951) 368-1473
8       E-mail:   Courtney.N.Williams@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

10                  UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          ED CR No. 25-310-KK

13            Plaintiff,               UNITED STATES' OPPOSITION TO
                                       DEFENDANT'S MOTION TO DISMISS OR
14            v.                       FOR ALTERNATIVE REMEDIES DUE TO
                                       SPOLIATION OF THE EVIDENCE AND
15                                     VIOLATION OF FEDERAL RULE OF
    JOSEPH BLANDON SAAVEDRA,           CRIMINAL PROCEDURE 16;
16                                     DECLARATIONS & EXHIBITS
              Defendant.
17

18

19        Plaintiff United States of America, by and through its counsel

20  of record, the First Assistant United States Attorney for the Central

21  District of California and Assistant United States Attorney Courtney

22  N. Williams, hereby files its Opposition to Defendant Joseph Blandon-

23  Saavedra's Motion to Dismiss or for Alternative Remedies Due to

24  Spoliation of the Evidence and Violation of Federal Rule of Criminal

25  Procedure 16 (Dkt. No. 42.)

26        This Opposition is based upon the attached memorandum of points

27  and authorities, the attached declaration and exhibits, the files and

28

records in this case, and such further evidence and argument as the Court may permit.

Dated: November 3, 2025          Respectfully submitted,

                                 BILAL A. ESSAYLI
                                 First Assistant United States
                                 Attorney

                                 ALEXANDER SCHWAB
                                 Assistant United States Attorney
                                 Acting Chief, Criminal Division

                                 PETER DAHLQUIST
                                 Assistant United States Attorney
                                 Chief, Riverside Office

                                 _____/s/_____
                                 COURTNEY N. WILLIAMS
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Joseph Blandon-Saavedra ("defendant") used his vehicle to
4  assault two law enforcement officers while they were on duty inside
5  their service vehicles.   The damage was photographed and documented.
6  Defendant was charged with two counts of assault on a federal officer
7  with a dangerous weapon in violation of 18 U.S.C. § 111(a)(1), (b).
8  More specifically, defendant reversed into M.P.'s vehicle (count one)
9  and forwarded into B.T.'s vehicle (count two).   After the assault,
10  B.T.'s vehicle was repaired while M.P.'s vehicle is still available
11  for inspection.

12      Defendant moves to dismiss this case, arguing that his due
13  process rights were violated because B.T.'s law enforcement vehicle
14  was repaired.   However, defendant has failed to meet his burden to
15  demonstrate that the car had exculpatory value and ignores that
16  comparable evidence exists in the form of photographs.   Moreover,
17  defendant cannot establish that the government acted in bad faith in
18  repairing a service vehicle.

19      And even if defendant were able to establish these elements—he
20  cannot—he fails to explain why dismissal of the indictment is the
21  only appropriate remedy when the vehicle repair only affects one
22  count of the indictment.   Defendant's motion should be denied.

23

## II.    STATEMENT OF FACTS

24      The United States adopts its statement of facts as contained in
25  its opposition to defendant's motion to dismiss indictment (Dkt. 31.)
26  The United States supplements its statement of facts with the
27  following:

28

1    Following defendant's arrest on September 4, 2025 for assault on

2   federal law enforcement officers, B.T.'s vehicle was towed to the ERO

3   Field Office and M.P.'s vehicle was driven back to the ERO field

4   Office. (See Declaration of Julius Garcia ("Garcia Decl.") ¶¶ 3,5;

5   exhibit 3, photographs.).

6    According to policy, if a government vehicle is involved in an

7   accident, the Homeland Security Investigations ("HSI") agent, in this

8   case B.T., must immediately report the accident to his supervisor and

9   local law enforcement. (See Declaration of Raul Flores II ("Flores

10  Decl.") ¶ 5.) That agent and/or his supervisor is then expected to

11  obtain estimates for repair. On September 4, 2025, the same day and

12  only hours after defendant drove his vehicle into M.P. and B.T.'s

13  service vehicles, HSI Supervisory Special Agent Micah Spooner-Wyman

14  started the process for having the B.T.'s vehicle repaired. (See

15  Exhibit 1, E-mails Regarding Repair, pages 13-14; see also exhibit 2,

16  estimates and receipts for repair.) Then from September 4, 2025[1] to

17  September 15, 2025, agents sent various messages discussing the

18  repair process and potential estimate costs to repair the damaged

19  vehicle. (Id. at 2-12.) Based on the repair receipts, on September

20  16, 2025, the repairs were approved and paid for. (Exhibit 2, at

21  23.) Agent Garcia picked up the repaired vehicle on October 29,

22  2025. (See Exhibit C to defendant's motion, E-mail Chain Between

23  Defense Counsel and Government Regarding Inspection of Vehicles.).

24  **III. LEGAL STANDARD**

25    The Due Process Clause does not "impos[e] on the police an

26

27  _____

28    [1] All references are based on the dates, numbers and times of
    the e-mails and estimates from HSI. The person who can provide more
    clarity is currently furloughed.

2

undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). When deciding whether to dismiss an indictment on these grounds, "the evidence must be viewed in the government's favor." United States v. Ubaldo, 859 F.3d 690, 703 (9th Cir. 2017).

For the government's loss or destruction of evidence to rise to the level of a due process violation, California v. Trombetta, 467 U.S. 479 (1984) and Youngblood require a defendant to establish that: (1) the exculpatory value of the evidence was apparent before the evidence was lost or destroyed; (2) the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the government agents acted in bad faith in losing or destroying the evidence. See, e.g., United States v. Martinez-Martinez, 369 F.3d 1076, 1087 (9th Cir. 2004); United States v. Hernandez, 109 F.3d 1450, 1455 (9th Cir. 1997); United States v. Westerdahl, 945 F.2d 1083, 1087 (9th Cir. 1991).

The burden is on the defendant to prove the three elements required to find a due process violation under Trombetta and Youngblood. See Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir. 1997) (defendant could not show prejudice, and failed to show bad faith); United States v. Lord, 711 F.2d 887, 891 n.3 (9th Cir. 1983) (burden of proof for constitutional or due process violation is on the defendant).

1    **IV.    ARGUMENT**

2        **A.    The Law Enforcement Service Cars Had No Apparent**
             **Exculpatory Value**
3

4        First, defendant failed to establish that the government

5    spoliated any exculpatory evidence, as might warrant the

6    extraordinary remedy of dismissal.  The "duty to preserve evidence is

7    limited to material evidence, i.e., evidence whose exculpatory value

8    was apparent before its destruction . . . ." <u>Grisby v. Blodgett</u>, 130

9    F.3d 365, 371 (9th Cir. 1997); <u>see also</u> <u>Trombetta</u>, 467 U.S. at 489-90

10   (original breath samples in DUI cases might have conceivably

11   contributed to defense, but chances were low that preserved samples

12   would have been exculpatory); <u>United States v. Martinez-Martinez</u>, 369

13   F.3d 1076, 1087 (9th Cir. 2004); <u>see also</u> <u>United States v. Drake</u>, 543

14   F.3d 1080, 1089-90 (9th Cir. 2008) (evidence that has the possibility

15   of exculpating a defendant while also having the possibility of

16   incriminating a defendant has no apparent exculpatory value).  Mere

17   speculation that destroyed evidence would have proven exculpatory if

18   retained is insufficient.  <u>Youngblood</u>, 488 U.S. at 58; <u>see</u> <u>Paradis v.</u>

19   <u>Arave</u>, 954 F.2d 1483, 1488 (9th Cir. 1992), vacated and remanded on

20   other grounds, 507 U.S. 1026 (1993) ("The mere failure to preserve

21   evidence which could have been subjected to tests which might have

22   exonerated the defendant does not constitute a due process

23   violation.").

24       Defendant fails to meet his burden.  Here, the evidence to the

25   law enforcement and defendant's vehicles are consistent with the fact

26   that defendant deliberately crashed his car into two law enforcement

27   vehicles.  Therefore, the evidence from the vehicles are inculpatory

28   evidence and not exculpatory evidence.

1    Defendant asserts the vehicle's loss precluded him from having

2    it examined by a defense expert who would have conducted test to

3    refute the officer's testimony regarding the crash.  Defendant's

4    arguments are mere speculation, and the Court can just as easily

5    speculate that additional testing would have provided further proof

6    that defendant did in fact hit the officers.

7        But also, second, the fact that defendant would need an expert

8    to examine the vehicles demonstrates that there is no exculpatory

9    value that was readily apparent at the time it was repaired.

10       Defendant asks this Court to "imagine if the government charged

11   a man with criminally assaulting a federal officer with . . . a

12   firearm or a knife," but the evidence in this case is not like a

13   firearm or a knife.  The evidence in this case is unique and is a

14   service vehicle that is instrumental in the officer's daily

15   profession and thus, it is not unreasonable that two months after the

16   incident, the agency had the vehicle repaired and returned to

17   service.  Ultimately, the vehicle was inculpatory evidence, and the

18   government had no legal duty to forgo repairs once photographs had

19   been captured of the vehicle's damaged state.

20   **B.   Comparable Evidence is Available**

21       Second, defendant failed to show that he was "unable to obtain

22   comparable evidence by other reasonably available means."  Trombetta,

23   467 U.S. at 489.  Trombetta does not require that the alternative

24   evidence be an exact substitute for that which is lost; it only

25   requires that the substitute evidence be "comparable."  Id.

26   Comparable or substitute evidence may be of poorer quality than the

27   lost or destroyed evidence. See id. at 490.

28

Here, there are photographs that show the damage to the officers and the defendant's vehicle.  (<u>See</u> exhibit 3, photographs.)  In fact, the photographs are superior to the evidence he claims is material to his case because the photographs depict the exact position of the vehicles when defendant crashed his car into the two law enforcement vehicles.  The photographs are good quality and taken from different angles.

Even if the car constituted potentially exculpatory evidence that the government destroyed—which it does not—the officers preserved comparable evidence, photographs.  Thus, Defendant's motion fails on this point as well.  <u>See</u> <u>Drake</u>, 543 F.3d at 1089-90.

## C. Defendant Failed to Establish that the Government Acted in Bad Faith

Third, defendant failed to show that the government acted in bad faith.  This Court and the Supreme Court have both repeatedly stated that, to warrant dismissal of the case against him, a defendant must make a showing nearly tantamount to intentional misconduct by the government.  <u>Trombetta</u>, 467 U.S. at 479 (faulting defendants for their failure to show evidence of "official animus towards [the defendants]" or "a conscious effort to suppress exculpatory evidence"); <u>Youngblood</u>, 488 U.S. at 58 (bad faith due process violations are limited to "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant"); <u>Phillips v. Woodford</u>, 267 F.3d 966, 987 (9th Cir. 2001) (finding no bad faith on the part of the police, in part because the defendant made "no colorable showing, or indeed any showing at all that the State destroyed the [vehicle] to prevent disclosure of evidence favorable to the defense"); <u>Featherstone v.</u>

Estelle, 948 F.2d 1497, 1505 (9th Cir. 1989) (finding no evidence of
bad faith when photo from photo lineup was destroyed, but it was
"clear that [the destruction] was not deliberately done to deprive
petitioner of access to relevant evidence"); Mitchell v. Goldsmith,
878 F.2d 319, 322 (9th Cir. 1989) ("[T]he police did not know the
semen samples would have exculpated [defendant] when they failed to
perform certain tests or refrigerate [the samples], hence there was
no bad faith on the part of the police.") (internal quotation marks
omitted).  In other words, in this Circuit, to make a showing of bad
faith that will satisfy the Youngblood/Trombetta test, a defendant
essentially must show that the government acted with the intent of
depriving the defendant of access to exculpatory evidence. See United
States v. Flyer, 633 F.3d 911, 916 (9th Cir. 2011) ("Bad faith
requires more than mere negligence or recklessness."); See United
States v. Hernandez, 109 F.3d 1450, 1455 (9th Cir. 1997) ("The mere
failure to preserve evidence which could have been subjected to tests
which might have exonerated the defendant does not constitute a due
process violation.")

Defendant has failed to show any bad faith by the government.
In this case, HSI personnel are required to immediately report an
accident or collision to their supervisor and local law enforcement.
(Flores Decl. ¶ 5.)  HSI has limited inventory of service vehicles,
approximately 11 loaner vehicles for approximately 450 officers, and
has been repairing damaged vehicles as soon as possible for officers
to utilize.  (Id. ¶ 3.)  The e-mails attached as Exhibit 1
demonstrate that B.T. followed the protocols set by his department
and reported the vehicle damaged. (See generally Exhibit 1.)  His
supervisor then requested estimates to get the vehicle repaired

before the end of the 2025 fiscal year (September 20, 2025).  (Id.) The e-mails also show that officers started the inquiry into the repair process even before the Complaint was filed in this case. (See Exhibit 1, at 13-14.)  There can be no bad faith when evidence is not preserved due to adherence to standard procedures and policies.  See, e.g., United States v. Guerrero-Hidrogo, 710 F. App'x 774, 775 (9th Cir. 2018) (no bad faith because routine overwriting of video every sixty days was not a product of "official animus" or of a "conscious effort to suppress exculpatory evidence"); United States v. LeGrande, 379 F. App'x 600, 601 (9th Cir. 2010) (same).  Likewise, there can be no bad faith here where HSI followed its own policies. But also, there can be no bad faith when B.T. started the inquiry to the repair process before a Complaint was even filed in this case.

### D.  Dismissal is Not Warranted

Finally, apart from defendant's failure to establish any of the elements of a due process violation, he also fails to show that dismissal is the only remedy, and that no less drastic alternatives are available.  See United States v. Kearns, 5 F.3d 1251, 1254 (9th Cir. 1993); United States v. Morrison, 449 U.S. 361, 364-365 (1981) (sanctions should be tailored to remedy constitutional violation without unnecessarily infringing on competing interests).

Dismissal is not warranted.  As an initial matter, defendant was charged with two counts of assault on a law enforcement officer with a deadly weapon.  He crashed his vehicle into two separate law enforcement service vehicles.  Only B.T.'s vehicle was repaired.  The other vehicle is still available to be inspected[2].  Even if the Court

---

[2] Defendant has still not inspected this vehicle.

8

found that the damage to the vehicles were exculpatory evidence, the photographs are not comparable evidence, and the government acted in bad faith, that still would not warrant dismissing the entire indictment.

Also, Federal Rule of Criminal Procedure 16 does not require dismissal. In each of the cases defendant references, the defense attorneys in those cases made specific references to pieces of evidence and asked that the government preserve them. They didn't make blanket discovery requests and assume that evidence that they deem material the government would also view as material to defendant's defense. See United States v. Muniz-Jaquez, 718 F.3d 1180, 1183 (9th Cir. 2013) (defense counsel specifically requested dispatch tapes); United States v. Hernandez-Meza, 720 F.3d 760, 768 (9th Cir. 2013) (defense counsel requesting naturalization certificate); United States v. Lloyd, 992 F.2d 348 (D.C. Cir. 1993) (defense counsel requesting tax returns). In this case, defense counsel did not request that the government preserve the law enforcement vehicles. Without such request, the law does not require the government to do so.

But also, the rule specifically states, "upon a defendant's request, the government must permit the defendant to inspect and to copy . . . tangible objects . . . if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; [or] (ii) the government intends to use the item in its case-in-chief at trial . . . ." (See Fed. R. Crim. 16(a)(1)(E)) (emphasis added). Here, by the time defense counsel requested to inspect the vehicles, B.T.'s vehicle was not in the government's custody but was at a repair shop being repaired.

9

(See Exhibit 2, at 25.)  Moreover, the government did not, and does not, intend to use B.T. vehicle (or M.P.'s vehicle) in its case-in-chief at trial.

Lastly, defendant argues that the damaged vehicles were referred to in the government's production letter.  (See Exhibit B to defendant's motion.)  This is not true.  The government referenced reports, an Instagram video, and defendant's statement in its production letter.  (Id.)  The government also said that it would make available for inspection anything pertaining to those reports and video or audio recordings.  Consistent with the production letter, defendant is still free to inspect the metadata pertaining to the photographs or defendant's recording and/or still free to photocopy any of the reports and photographs in this case.

Ultimately, defendant can raise his concerns pertaining to preservation of the truck before the jury by cross-examining officers and arguing as to the thoroughness of the investigation during closing arguments.  Sanctions are neither necessary nor required here.  Defendant's motion should be denied in its entirety.

In short, defendant failed to present evidence that: (1) the repaired vehicle had apparent exculpatory value at the time it was lost, (2) he had no access to comparable evidence, or (3) the repair of the vehicle was caused by anything other than negligence.  Thus, the loss of the evidence did not deny defendant the due process of law, defendant failed to meet his burden, and this Court should deny his motion.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion.

10