CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHAD PENNINGTON
AYAH A. SARSOUR (Bar No. 340280)
(EMail: Ayah_Sarsour@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
JOSEPH BLANDON-SAAVEDRA

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH BLANDON-SAAVEDRA<br><br>Defendant. | Case No. 5:25-cr-00310-KK-1<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR FOR ALTERNATIVE REMEDIES DUE TO SPOLIATION OF THE EVIDENCE AND VIOLATION OF FED. R. CRIM. P. 16; DECLARATION OF COUNSEL**<br><br>**Hearing Time & Date:<br>November 10, 2025, at 10:00 a.m.** |

Defendant Joseph Blandon-Saavedra, by and through counsel of record, Deputy Federal Public Defenders, Ayah A. Sarsour and Chad Pennington hereby submits this reply brief in support of his request that the Court dismiss the indictment on the grounds that the government destroyed or failed to preserve exculpatory evidence, or, alternatively, that it destroyed or failed to preserve potentially useful evidence in bad faith.

This motion is made pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, as well as *Brady v. Maryland*, 373 U.S. 83 (1963); *California v. Trombetta,* 467 U.S. 479 (1984); *Arizona v.*

*Youngblood*, 488 U.S. 51 (1988); *United States v. Cooper*, 983 F.2d 928 (9th Cir. 1993); and *United States v. Zaragoza-Moreira,* 780 F.3d 971 (9th Cir. 2015).

This motion is supported by the accompanying Memorandum of Points and Authorities and the offered exhibits, files, and records in this case, the possible testimony of witnesses called at the hearing, and any additional arguments and evidence that may be presented to the Court at the hearing on this motion.

Respectfully submitted,
CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 4, 2025,

By /s/ *Ayah A. Sarsour*
AYAH A. SARSOUR
Deputy Federal Public Defender

By /s/ *Chad Pennington*
CHAD PENNINGTON
Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction & Background

This is a case about an alleged assault stemming from an auto collision. The state of the autos at issue, their physical condition after the collision, is of obvious importance to the jury and the defense. It was also obvious to the government, as the collision of the now repaired vehicle featured prominently in the Complaint. *See* ECF No. 1, p. 5.

The Court's Order granting accelerated briefing directed the government, in response, to include the following information:

> The Government's brief shall contain all information regarding requests to preserve evidence, specifically, the vehicle which has allegedly been repaired, including email correspondence reflecting what, if any, action the Government took to ensure the preservation of evidence. In addition, the Government shall include all documents reflecting how and when the alleged repair was requested and made to include email correspondence to the individuals and entities who conducted the repairs.

ECF No. 46 at 2.

In substance, the Court's Order directed the government to include: 1.) what efforts the government took to preserve evidence and to show 2.) when the repairs on the Homeland Security vehicle were requested and made. The government's response fails the Court's Order.

First, the government's response offers no evidence on what steps *it* took to *preserve* evidence. The uncontroverted record shows that on September 8, 2025, Mr. Blandon-Saavedra served a discovery demand on the government requesting evidence preservation and the right to inspect as conferred under Federal Rule of Criminal Procedure 16(a)(1)(E). After the service of the defense discovery demand, the government began receiving estimates to repair the government vehicle, on September 11, 2025, and September 15,

3

2025. *See* ECF No. 47-4, Government Response ("Response"). In fact, the government received *three* estimates after the defense had served its discovery demand, and, it appears to have tendered payment for repair on September 16, 2025. Crucially no estimates, payments, or repairs had been conducted *before* service of the discovery demand on September 8, 2025. After receiving the discovery demand, the government, again, took no steps to ensure the preservation of the vehicle at issue. Instead, the immigration agents, uncounseled, proceeded with the repair of the central piece of evidence in the case.

Good-faith required the government to take steps to preserve the evidence after receipt of the defense's discovery demand, not intentionally move forward with repairs. To the question of the executive branch's intent, the record shows the immigration officials proceeded with haste to repair the vehicle at issue because the "money shut[]" off was near September 16, 2025, the date of payment. *See* 47-3, p. 3. And, as noted above, there is no evidence government counsel after receiving the defense's discovery demand took any preventive measures to preserve evidence, such as counseling the immigration agents that the criminal defense team had requested preservation and the right to inspect. The government claims the immigration officials had inquired into the auto repairs before the Complaint had been filed. *See* ECF No. 47 p. 7. Inquiry is not relevant. The bad faith here was proceeding with estimates, payment, and repairs, *after* the discovery demand had been served. For good faith, the government would have stopped at the inquiry phase.

Second, the Court knows the repairs were completed on the subject government vehicle on October 27, 2025. *See* ECF No. 42-3, Ex. C p. 3. (October 28, 2025, email where the government represented the "HSI vehicle was repaired. They wrapped up the repairs on the vehicle yesterday."). The

government response indicates payment for repairs was made on September 16, 2025, but it offers no evidence on when the repairs were actually started.

As to remedy, the Ninth Circuit's reasoning in *Cooper* is instructive. 983 F.2d 9at 933. The defense here has lost "the [narrative] power of *physical* evidence." *Id.* Photos alone will not do as a substitute for physical evidence in this case. Based on the presented record: "physical inspection is necessary to evaluate the vehicle's crush profiles, paint transfer, deformation patterns, and mechanical damage angles in order to determine direction, force, and sequence of impact." Sarsour Decl. ¶ 5. Like in *Cooper*, now that the vehicle has been destroyed no expert can review the evidence. The government argues that an expert in collision could reach the conclusion Mr. Blandon-Saavedra caused the accident. That could be true. But a government or defense expert could reach the opposite conclusion. This is the very spoilation problem identified in *Cooper*, with the loss of physical evidence here, neither party knows what their expert may conclude as to causation. 983 F.2d 9at 933 (the Court noting that the flaw in the government's reasoning was assuming that its own expert would reach a conclusion regarding spoiled evidence).

The government states that Homeland Security personnel are required to report an accident or auto collision under internal policy. That may be true, but it is also irrelevant. The government offers no support for a Homeland Security requirement that vehicles reported as damaged *must* proceed to estimate, payment, and repair *after* a criminal discovery demand had been served. Indeed, there is nothing in the Fifth Amendment criminal discovery framework that creates a Homeland Security policy carve out. This is a criminal proceeding, and again, the government asks the Court to accommodate extraneous executive branch policies that have no application.

## II. Legal Standard

The government's response misstates the law. The Ninth Circuit has held in criminal spoilation cases that there is different judicial treatment of material exculpatory evidence and potentially useful evidence. *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012). "[W]hen the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *Id.* (internal citation omitted). Failure of the "State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" so-called useful evidence, "does not violate due process unless a criminal defendant can show bad faith on the part of the police." *Id.* (internal citation omitted). Accordingly, "applicability of the [*Arizona v. Youngblood*, 488 U.S. 51 (1988)] good-faith requirement depends on whether the evidence was material exculpatory evidence or simply potentially useful evidence." *Id.* (internal citation omitted).

The government's argument muddles the standard. It argues the spoiled repaired vehicle was not material exculpatory evidence, and that it acted in good faith. However, the government does not argue the usefulness of the lost evidence and appears to have conceded that issue.

## III.      Argument
### A. The vehicle at issue was material and exculpatory

The Court can stop at this portion of the analysis without wading into good faith. The Ninth Circuit jury instruction on assault of a federal officer with a dangerous or deadly weapon turns on whether Mr. Blandon-Saavedra forcibly assaulted a government employee. *See* Ninth Circuit Model Criminal Jury Instruction 8.2. Whether he, in turn, forcibly assaulted the immigration officer turns on whether he intentionally struck the officer or willfully

6

attempted to inflict injury on the officer. *See id*. The question of whether Mr. Blandon-Saavedra struck the officer's vehicle, or the officer struck him, is part of the core elements of the government's charged offense. In addition, the government will be required to demonstrate Mr. Blandon-Saavedra used a dangerous weapon. Whether Mr. Blandon-Saavedra used his vehicle, or whether his vehicle was struck, again, goes to the core elements of this case. The value of this evidence was readily obvious and apparent to the government. It offered photos of the damaged but now repaired government vehicle in the Complaint to demonstrate that Mr. Blandon-Saavedra assaulted the officers with a deadly or dangerous weapon – i.e., that he used his vehicle to strike an officer. The government could not credibly argue that Mr. Blandon-Saavedra intended to forcibly assault the officers without offering evidence that he *used* his vehicle in an intentional or willful manner against the officer's vehicle. The entire case of whether Mr. Blandon-Saavedra used his vehicle as a deadly instrument hinges on how it was used against the government vehicle. The damage to the defense's case is that evidence showing how he *used* his vehicle in a particular manner is gone.

**B. The vehicle was potentially useful**

The government does not argue the potential usefulness of the destroyed evidence nor address the defense's offer of *United States v. Zaragoza-Moreira*, 780 F.3d 971, 978 (9th Cir. 2015). In *Zaragoza*, the Ninth Circuit found the evidence useful because in part it could have contributed to a defense claim of duress. *See id*. at 979.

Assuming *arguendo* the government is correct, and it was Mr. Blandon-Saavedra that struck the officer's now destroyed vehicle (destroyed as a piece of material evidence), then the destroyed vehicle would remain useful to the defense under Model Jury Instruction 8.3. Specifically, if the defendant stuck the officer's vehicle first, but did so believing he would be struck first by the

7

officer and the officer's use of force was not lawful, he would be entitled to an instruction on his proportional use of force. Like in *Zaragoza*, the usefulness of the destroyed evidence must be judged from the perspective of not only Mr. Blandon-Saavedra contesting the government's narrative of who hit who first, but also the lost evidence's use as a potential defense on why his force may have been used initially.

**C. No comparable evidence exists**

*Zaragoza* again is instructive on comparable evidence. 780 F. 3d at 981. In that case, there was no comparable evidence available to the defense after the loss of the destroyed digital evidence undermining the defense's duress claim. *See id*. And, the defendant's testimony could not be relied upon to remedy the evidentiary gap. Simply, Mr. Blandon-Saaverda should not be forced to waive his constitutional right to silence to fill the evidentiary gap caused by the government's decision to repair a vehicle after a discovery demand had been served. Moreover, as noted in *Zaragoza*, any defendant testimony could be viewed as self-serving and does not offer the jury the same objective evidence as testing of the damage would provide. *See id*. And, the defense's potential consultant: could not recreate [the collision] based on the materials currently in the defense's possession as provided by the government, [because] he would be unable to develop or offer any forensic, fact-based opinion suitable for testimony at trial without conducting an in-person examination of the unrepaired vehicle." Sarsour Decl. ¶ 6. Without access to the vehicle in an unrepaired state, the defense's potential consult stated "that without access to the unrepaired vehicle, it is almost impossible to tell who caused the collision." *Id*. There is no comparable evidence in this case, it has been destroyed because it has been repaired.

8

### D. The government did not act in good faith

The government knew of the *apparent* exculpatory value of the destroyed evidence at time it decided to proceed with the estimates and repair of its vehicle. And, it knew of the usefulness to the defense at the time it received those estimates, offered payment, and had the vehicle repairs completed. *Zaragoza*, 780 F.3d at 977, 978. This all came after September 8, 2025, when the government was already on notice that the defense demanded physical items be preserved and that the defense would be inspecting, and the government has already offered the vehicle damage extensively in the Complaint. Even absent a constitutional violation, the Court retains discretion to impose remedial sanctions where the government's conduct falls below acceptable standards. *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979). Here, the government's conduct fails under any standard of review.

### 1. The government disregarded this Court's order

The government's response is silent on the government's preservation requirement and fails to produce even a single communication showing compliance. Instead, it shows proceeding ahead with the repairs after service of the discovery demand. This omission alone undermines any claim of good faith, and arguably a concession on the issue.

In *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011), the Court held that bad faith exists when the government fails to take reasonable measures to preserve evidence after being made aware of its potential significance. In this case, the defense's letter dated September 8, 2025, clearly notified the government of the obligation to preserve and produce the vehicles. Despite this notice, the government neither provided a meaningful response nor demonstrated any attempt to preserve the evidence. Its

9

complete failure to act, satisfies the bad faith requirement established in *Youngblood*, 488 U.S. at 58.

Moreover, the government offers no explanation for the gap in time between September 16, 2025, until confirmation of the repair in late October of 2025. The government concedes that repair approval and payment occurred on September 16, 2025, yet offers no explanation for the vehicle's status or location until nearly the end of October of 2025. This unexplained six-week period covers the precise time in which the physical evidence was altered, repaired, and released from investigative control. The resulting gap in the chain of custody prevents both the defense and the Court from determining what actions were taken, by whom, and under what authority, are all facts essential to evaluating intent and prejudice.

Moreover, *Flyer* emphasizes that once the government is aware of an item's evidentiary significance, a failure to monitor, secure, or document the chain of custody reflects reckless disregard amounting to bad faith. 633 F.3d at 916. The government's silence regarding the vehicle's location for more than a month, coupled with the absence of any contemporaneous documentation, precludes an inference of innocent oversight. The omission is not mere procedural neglect but an intentional destruction of material evidence. It is also important to highlight for the Court that this is not the first time the government has chosen to repair vehicles after a discovery request had been made in cases involving Homeland Security and ERO collisions within the Eastern Division. In *United States v. Castillo-Ortega*, 5:25-cr-00261-JGB (C.D. Cal. 2025), an immigration vehicle had been repaired before it could be inspected by the defense. In the absence of a credible explanation or documented preservation effort, the Court should conclude that the government acted in bad faith.

### 2. Homeland Security's policies do not excuse noncompliance with criminal discovery

Further, the government bears the burden of justifying its conduct. *Loud Hawk*, 628 F.2d 1139, 1152. The government here took no measures to ensure the preservation of evidence. In fact, the timeline for the requests for estimates and repairs demonstrates the opposite. The internal emails attached to the government's brief confirm that Homeland Security initiated the repair authorization process on September 4, 2025, the very day of the incident, before the Complaint was filed and while the defense's preservation rights were intact. The government's own brief concedes that eleven Homeland Security vehicles were awaiting repairs at the time and that the damaged vehicle was repaired according to standard fleet procedures in order to return it to limited use before the close of the fiscal year. This explanation underscores that administrative expediency, not evidentiary integrity, drove the decision to alter and destroy critical physical evidence. This sequence of events demonstrates that the government's conduct was not inadvertent. Rather, it reflects a deliberate choice to prioritize agency convenience over compliance with constitutional and judicial preservation duties. The government has provided no affidavit, declaration, or contemporaneous documentation showing that officials attempted to secure, segregate, or photograph the vehicle in a condition that would preserve its evidentiary value prior to repair. Its failure to do so, despite explicit notice of the evidence's materiality, constitutes the very "official animus or conscious effort to suppress exculpatory evidence" *California v. Trombetta*, 467 U.S. 479 (1984), cautions against. The timing of the repair requests and the government's fiscal-year justification reveal that preservation was never a consideration. This conduct is not simple negligence. It is affirmative proof of

deliberate disregard for the defendant's due process rights under *Youngblood* and *Trombetta.*

### 3. The government's spoilation prejudiced the defense

While the government bears the burden of justifying its conduct, the defendant bears the burden of demonstrating prejudice. *Loud Hawk*, 628 F.2d at 1152. Here, the prejudice is both concrete and irremediable.

In the defense declaration, Robert Snook advised that based on the available information, no professional or scientifically valid opinion can be offered without examining the unrepaired vehicle in person. He explained that photographs alone are "half the puzzle" and are not comparable to assessing the physical vehicle's condition, deformation patterns, and points of impact. Sarsour Decl. ¶ 4. Without direct access to the unrepaired vehicle, the defense is "left without any forensic or factual-based opinion" and cannot meaningfully determine who caused the collision. *Id.* ¶ 6. In other words, the destruction of the vehicle makes it "almost impossible to tell who caused the collision with only looking at pictures of cars." *Id.* This demonstrates precisely the prejudice that *Cooper*, *Zaragosa,* and *Youngblood* contemplate.

The destroyed vehicle was the single most critical piece of physical evidence in this case, as it contained measurable forensic indicators (crush depth, transfer marks, paint layers, and mechanical damage angles) that are essential to a qualified reconstruction expert's analysis. By destroying that evidence, the government foreclosed the defense's ability to mount a fact-based, technical challenge to the prosecution's theory of intent. The prejudice is not speculative. Rather, it is real, quantifiable, and total.

### Conclusion

For these reasons, and in the interest of justice, Mr. Blandon-Saavedra respectfully requests that this Court dismiss the indictment with prejudice based on the government's spoilation of evidence.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 4, 2025    By /s/ Chad Pennington
CHAD PENNINGTON
Deputy Federal Public Defender

## CERTIFICATE OF COMPLIANCE AND DECLARATION

I, Chad Pennington, counsel of record for the defendant, certify that this filing complies with the requirements of L.R. 11-6.1.

I, Chad Pennington, counsel of record, further certified under penalty of perjury that the representations in this filing are true and accurate.