UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCR 25-00310-KK-1** | Date: | November 14, 2025 |
|---|---|---|---|
| Title: | ***USA v. Joseph Blandon-Saavedra*** | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Twyla Freeman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   (In Chambers) Order GRANTING IN PART Defendant's Motion to Dismiss [Dkt. 42]

## I.
## INTRODUCTION

On September 24, 2025, an indictment was filed charging Joseph Blandon-Saavedra ("Mr. Blandon-Saavedra") with two counts of assaulting, resisting, or impeding a federal officer using a dangerous or deadly weapon in violation of 18 U.S.C. § 111(a)(1), (b). ECF Docket No. ("Dkt.") 14, Indictment. The counts arise out of two collisions between Mr. Blandon-Saavedra's car and (1) an Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") vehicle ("ERO Vehicle") driven by Officer Perera, and (2) a Homeland Security Investigations ("HSI") vehicle ("HSI Vehicle") driven by Agent Tomaselli. Id.

On October 29, 2025, Mr. Blandon-Saavedra filed the instant Motion to Dismiss ("Motion") Dkt. 42, Motion ("Mot."), which has now been fully briefed and argued. For the reasons set forth below, the Motion is **GRANTED IN PART**.

## II.
## BACKGROUND

On September 4, 2025, ICE ERO officers and HSI agents conducted an immigration enforcement operation targeting Mr. Blandon-Saavedra. Dkt. 1, Complaint ("Compl.") ¶¶ 6, 8. At approximately 7:30 a.m., the officers and agents began surveilling Mr. Blandon-Saavedra's home in San Bernardino, California. Id. ¶ 8. At approximately 8:30 a.m., the officers and agents saw Mr.

Blandon-Saavedra leave his home, enter a car, and begin driving southbound on Arrowhead Avenue. Id. ¶ 9. Officer Perera began following behind Mr. Blandon-Saavedra in his vehicle. Id. ¶ 10. After Mr. Blandon-Saavedra turned west on 16th Street, Agent Mejia positioned his vehicle in front of Mr. Blandon-Saavedra's car to block his direction of travel. Id. ¶ 11. Officer Perera and Mr. Blandon-Saavedra's vehicles then collided with one another. Id. ¶ 12. Around the same time, Agent Tomaselli drove his vehicle to the left of Mr. Blandon-Saavedra's car to "box in" Mr. Blandon-Saavedra. Id. ¶ 13. Agent Tomaselli and Mr. Blandon-Saavedra's vehicles then also collided with one another. Id. ¶ 14. Mr. Blandon-Saavedra was subsequently arrested. Id. ¶ 16.

At approximately 1:25 p.m., Agent Garcia, Agent Aguirre, and Deportation Officer Nilo interviewed Mr. Blandon-Saavedra at the ERO Field Office in San Bernardino. Dkt. 54-1, Department of Homeland Security's Report of Investigation ("Report") at 2. During the interview, Mr. Blandon-Saavedra claimed Officer Perera and Agent Tomaselli hit his car first. Specifically, the Report states:

> SA Garcia informed BLANDON that the agents were there to discuss the incident that occurred earlier that day, to which BLANDON stated they hit me.

Id.

The Report was completed by Agent Garcia on the same day and approved by Agent Wolcott on September 9, 2025. Id. at 1.

At 2:30 p.m., approximately one hour after Mr. Blandon-Saavedra's post-arrest interview, Agent Spooner-Wyman sent an email to Jose Cervantes ("Mr. Cervantes"), who appears to oversee fleet management for the HSI Field Office in Los Angeles, see generally dkt. 47-3 ("Ex. 1"), and Agent Tomaselli, initiating the repair authorization process for the HSI Vehicle. Id. In his email, Agent Spooner-Wyman stated the HSI Vehicle "sustained damage during an arrest operation earlier this morning as a direct result of willful actions on the part of the arrest subject." Id. at 11. At 6:30 p.m., Agent Tomaselli replied with the information of a repair shop that "has been used by Riverside agents." Id. at 10. In response, Mr. Cervantes instructed Agent Tomaselli to "[h]ave them go to where the vehicle is and see if we can get an estimate." Id.

On September 5, 2025, the Government filed the Complaint charging Mr. Blandon-Saavedra with two counts of assaulting, resisting, or impeding a federal officer with a deadly and dangerous weapon, in violation of 18 U.S.C. § 111(a)(1), (b). Compl. ¶ 17. The Complaint is based on a statement of probable cause by Agent Garcia. See generally id. In his statement, Agent Garcia alleges Mr. Blandon-Saavedra "reversed his Camry and slammed into Officer Perera's vehicle" and "drove the Camry forward into the front passenger side tire area of Agent Tomaselli's vehicle." Id. ¶¶ 12-14. However, Agent Garcia's statement omits any reference to Mr. Blandon-Saavedra's claim that Officer Perera and Agent Tomaselli hit his car first.

On the same day, Mr. Blandon-Saavedra made his initial appearance on the Complaint and was appointed counsel. Dkt. 4. Magistrate Judge Pym ordered Mr. Blandon-Saavedra to be released on bond, subject to additional conditions of release. Id.

Despite the release order, ICE took Mr. Blandon-Saavedra into custody following his initial appearance. See dkt. 23 at 7. Mr. Blandon-Saavedra was transported to the Adelanto ICE

Processing Center, where he remains detained today.  Id.  As a result, Mr. Blandon-Saavedra's counsel has encountered several obstacles preventing them from consulting with Mr. Blandon-Saavedra while detained in immigration custody.  Among other things, Mr. Blandon-Saavedra's defense investigator was denied access into the detention facility, and Mr. Blandon-Saavedra's counsel was unable to obtain a Spanish language interpreter to travel to the facility.[1]  Id. at 3-6.

On September 8, 2025, Mr. Blandon-Saavedra's counsel sent the Government a discovery letter requesting, among other things, "an opportunity to inspect, copy, and/or test all tangible objects and buildings or places which the government intends to use in its case-in-chief at trial and/or which are material to preparation of Mr. Blandon-Saavedra's defense."  Dkt. 42-1 ("Ex. A") at 3.  The letter further stated, "defendant specifically requests preservation of . . . physical evidence that may be destroyed, lost, or otherwise put out of possession, custody, or care of the government."  Id. at 6.

On September 11 and September 15, 2025, HSI obtained estimates from three repair shops.  See dkt. 47-4 ("Ex. 2") at 2-10, 12-16.  Subsequently, on September 15, 2025, Agent Tomaselli, Agent Spooner-Wyman, and Mr. Cervantes corresponded over email to submit a Fleet Card Transaction Worksheet ("FCTW") by the end of that day to secure approval for the payment of the repairs.  Ex. 1 at 7-9; see also Ex. 2 at 26.  Agent Wolcott was copied on these emails.  See Ex. 1 at 7-9.  According to these emails, Agent Tomaselli, Agent Spooner-Wyman, and Mr. Cervantes sought expedited approval of the repairs to avoid an imminent funding cutoff.  At 12:33 p.m., Agent Spooner-Wyman sent an email inquiring if he or Agent Tomaselli needed to provide any additional items for the FCTW "[t]o give ourselves the best shot at getting [Agent Tomaselli's] needed repairs over the hurdle before the money shuts off tomorrow."  Id. at 9.  At 1:39 p.m., Mr. Cervantes replied he "need[ed] [the FCTW] as soon as possible" because "HQ will need to approve it."  Id. at 8.  At 1:46 p.m., Mr. Cervantes further noted "[t]he deadline is tomorrow at noon," and "[t]he goal is to have it completed COB today."[2]  Id. at 7.

Between 11:13 a.m. and 3:08 p.m., Mr. Cervantes forwarded Agent Tomaselli the three repair estimates and instructed him to "submit immediately and get [the FCTW] approve[d]."  Ex. 1 at 2-6.  At 3:28 p.m., Agent Tomaselli confirmed the "FCTW ha[d] been submitted for approval."  Id. at 7.  At 3:29 p.m., Mr. Cervantes thanked Agent Tomaselli for his prompt submission of the FCTW and stated he "approved" it and was "waiting for HQ's approval."  Id.  Agent Wolcott was also copied on these emails.  See id. at 7-9.

---

[1] In light of these obstacles, on October 23, 2025, the Court ordered the Government to "transport Mr. Blandon-Saavedra to the United States Courthouse, 3470 Twelfth Street, Riverside, CA 92501-3801, each business day beginning on Monday, October 27, 2025."  Dkt. 38.  While not ideal and with added difficulties, defense counsel has been able to adequately prepare for trial.  The Court nonetheless notes its disappointment and disapproval that the Government has knowingly and intentionally chosen to erect unnecessary barriers that hinder the right to counsel.

[2] It is unclear what funding deadline Agent Spooner-Wyman and Mr. Cervantes were referring to in their email correspondence, given that the 2025 fiscal year for the federal government did not end until September 30, 2025.  See USAGov, The Federal Budget Process, https://www.usa.gov/federal-budget-process.

On September 16, 2025, the FCTW received final approval. Ex. 2 at 23-25. At 11:24 a.m., HSI tendered payment to the repair shop for the repairs to the HSI Vehicle. Id. at 11.

On September 24, 2025, a grand jury indicted Mr. Blandon-Saavedra on two counts of assault on a federal officer with a deadly and dangerous weapon. Dkt. 14. In Count One, Mr. Blandon-Saavedra is charged with assaulting Officer Perera with his car. Id. at 1. In Count Two, Mr. Blandon-Saavedra is charged with assaulting Agent Tomaselli with his car. Id. at 2.

On October 1, 2025, the Government responded to Mr. Blandon-Saavedra's September 8, 2025 discovery letter with its first and, thus far, only discovery production. Dkt. 42-2 ("Ex. B"). The Government's letter references reports, an Instagram video, and a statement by Mr. Blandon-Saavedra. Id. at 2. The letter further states:

> The government will make available for your inspection any item of evidence referred to above, as well as any other evidence seized from your client and/or which the government intends to offer in its case-in-chief.

Id.

On October 27, 2025, Mr. Blandon-Saavedra met with his counsel for the first time without the restrictions stemming from his detention at the Adelanto ICE Processing Center. Mot. at 5. On the same day, Mr. Blandon-Saavedra's counsel emailed the Government counsel to request an "inspection of all vehicles present at the scene." Dkt. 42-3 ("Ex. C") at 7. The Government counsel responded she "reached out to the agent," who "need[ed] to first find out where the vehicles are located." Id. at 6.

The next day, on October 28, 2025, the Government counsel informed Mr. Blandon-Saavedra's counsel that "one of the vehicles ha[d] been repaired." Id. at 4. When Mr. Blandon-Saavedra's counsel asked for further details, the Government counsel responded "[t]he HSI vehicle was repaired" and "[t]hey wrapped up the repairs on the vehicle yesterday."[3] Id. at 3.

On October 29, 2025, Mr. Blandon-Saavedra's counsel notified the Government of Mr. Blandon-Saavedra's intent to move to dismiss the indictment based on spoliation of evidence. In response, the Government counsel replied, "In reference to the car being fixed, well, there's nothing I can do about that." Id. Agent Garcia picked up the HSI Vehicle from the repair shop some time that day. Opp. at 2.[4]

Later the same day, Mr. Blandon-Saavedra filed the instant Motion, arguing the Government unlawfully destroyed or failed to preserve evidence in violation of the Due Process Clause of the Fifth Amendment ("Due Process Clause") and Federal Rule of Criminal Procedure 16 ("Rule 16"). Mot. Mr. Blandon-Saavedra moves to dismiss the indictment on the basis the Government repaired

---

[3] The ERO Vehicle remains unrepaired and available for inspection. Opp. at 8.

[4] The record does not show when the repair shop began repairs on the HSI Vehicle. According to the Government when it filed the Opposition, the "Mission Support Specialist who assisted with the vehicle repair process for the HSI vehicle involved in this case [wa]s unavailable due to the federal government shutdown." Dkt. 27-2 ("Flores Decl.") ¶ 4; see also Opp. at 2 n.1.

the HSI Vehicle before his counsel could inspect it.  Id. at 1.  As exhibits, Mr. Blandon-Saavedra filed his counsel's request for discovery, Ex. A, the Government's response to the request for discovery, Ex. B, and emails between his counsel and the Government regarding inspection of the vehicles, Ex. C.

On October 30, 2025, Mr. Blandon-Saavedra filed an unopposed Request for an Expedited Briefing Schedule on the Motion ("Request").  Dkt. 45, Request.

On October 31, 2025, the Court granted Mr. Blandon-Saavedra's Request.  Dkt. 46.  The Court directed the Government to file a responsive brief by November 3, 2025 and Mr. Blandon-Saavedra to file a reply within 24 hours of the Government's responsive filing.  Id. at 1.  The Court further ordered the Government to include in its brief "all information regarding requests to preserve evidence, specifically, the vehicle which has allegedly been repaired, including email correspondence reflecting what, if any, action the Government took to ensure the preservation of evidence."  Id. at 2.  The Court also ordered the Government to submit "all documents reflecting how and when the alleged repair was requested and made to include email correspondence to the individuals and entities who conducted the repairs."  Id.

On November 3, 2025, the Government filed an Opposition arguing the Government's failure to preserve evidence did not violate due process or Rule 16.  Dkt. 47, Opposition ("Opp.").  In support of the Opposition, the Government filed the Declaration of Julius Garcia, dkt. 47-1 ("Garcia Decl."), and the Declaration of Raul Flores II, ("Flores Decl.").  As exhibits, the Government filed emails regarding repair of the vehicles, Ex. 1, estimates and receipts for the repair, Ex. 2, and photographs of the vehicles after the collisions, dkt. 47-5 ("Ex. 3").  Despite the Court's October 31, 2025 order, the Government did not submit any information with the Opposition regarding requests to preserve evidence in this case, including email correspondence reflecting actions by the Government to ensure the preservation of evidence.  See dkt. 46.

On November 4, 2025, Mr. Blandon-Saavedra filed a Reply.  Dkt. 51, Reply.  In support of the Reply, Mr. Blandon-Saavedra filed the Declaration of Ayah A. Sarsour, dkt. 51-1 ("Sarsour Decl.").

On November 10, 2025, a hearing on the Motion was held.  During the hearing, the Court heard argument from counsel and directed the parties to submit supplemental briefing addressing the issues raised by the Court no later than Wednesday, November 12, 2025.  Dkt. 55.  At the hearing, the Government counsel conceded she "never asked the agents to preserve" the HSI Vehicle or any other physical evidence relevant to this case.

Following the hearing, Mr. Blandon-Saavedra submitted the Department of Homeland Security's Report of Investigation as an exhibit.  Dkt. 54-1, Report.

On November 12, 2025, Mr. Blandon-Saavedra filed a supplemental briefing.  Dkt. 59.

///

///

# III.
# LEGAL STANDARD

The Due Process Clause "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984). To protect that right, "[t]he Due Process Clause . . . requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment." Id. at 480. "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." Id. at 485 (citing United States v. Agurs, 427 U.S. 97, 112 (1976)).

This constitutional duty extends to the preservation of exculpatory evidence. See United States v. Rivera-Relle, 333 F.3d 914, 922 (9th Cir. 2003). Under Trombetta, "the government violates the defendant's right to due process if the unavailable evidence possessed 'exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" United States v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993) (quoting Trombetta, 467 U.S. at 489). "[W]hen the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." Illinois v. Fisher, 540 U.S. 544, 547 (2004). However, under Arizona v. Youngblood, a failure to preserve "potentially useful" evidence violates due process only if "a criminal defendant can show bad faith." 488 U.S. 51, 57-58 (1988). This "bad faith requirement dovetails with the first part of the Trombetta test: that the exculpatory value of the evidence be apparent before its destruction." Cooper, 983 F.2d at 931 (citing Trombetta, 467 U.S. at 489).

# IV.
# DISCUSSION

A.   THE HSI VEHICLE WAS POTENTIALLY USEFUL EVIDENCE

    1.   **Applicable Law**

Evidence is material and exculpatory if its admission "would have created a reasonable probability of a different result." United States v. Jernigan, 492 F.3d 1050, 1053-54 (9th Cir. 2007) (citation modified) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). To establish the evidence is materially exculpatory, "[a] defendant need not show that she 'would more likely than not have received a different verdict with the evidence.'" Id. at 1054 (quoting Kyles, 514 U.S. at 434). Rather, the defendant must only show the suppression of the evidence, "in the context of the entire record," "undermines confidence in the outcome of the trial." Benn v. Lambert, 283 F.3d 1040, 1053 (9th Cir. 2002) (quoting Agurs, 427 U.S. at 112). In contrast, evidence is merely "potentially useful" if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Youngblood, 488 U.S. at 57.

    2.   **Analysis**

Here, Mr. Blandon-Saavedra has consistently maintained Officer Perera and Agent Tomaselli hit his car with their vehicles first. See Report at 1; Mot. at 2. In fact, as documented in Agent Garcia's Report, Mr. Blandon-Saavedra told him law enforcement hit him mere hours after the

incident. Report at 2. However, due to the Government's failure to preserve the HSI vehicle, it is impossible to determine whether the physical evidence from the HSI Vehicle would have bolstered or undermined Mr. Blandon-Saavedra's claim. Thus, the Court cannot conclude HSI Vehicle was material exculpatory evidence. See, e.g., United States v. Sivilla, 714 F.3d 1168, 1172 (9th Cir. 2013) (holding a car in a case involving drug trafficking offenses was not material exculpatory evidence).

However, as conceded by the Government at the hearing on the Motion,[5] the HSI Vehicle was potentially useful evidence in supporting Mr. Blandon-Saavedra's claim. Further examination and inspection of the HSI Vehicle could have demonstrated Agent Tomaselli, in fact, hit Mr. Blandon-Saavedra's car first. Such a finding would have been essential to Mr. Blandon-Saavedra's defense and could have "be[en] expected to play a significant role in [Mr. Blandon-Saavedra's] defense." Trombetta, 467 U.S. at 488. If Agent Tomaselli hit Mr. Blandon-Saavedra's car first, then Mr. Blandon-Saavedra lacked the intent necessary to sustain a conviction of forcibly assaulting a federal officer under 18 U.S.C. § 111(a)(1) or an enhanced penalty under 18 U.S.C. § 111(b). See United States v. Feola, 420 U.S. 671, 684 (1975) (holding the statutory offense requires intent to assault). Similarly, if an examination of the HSI Vehicle confirmed Agent Tomaselli hit Mr. Blandon-Saavedra's car first, this finding would cast doubt on the Government's narrative that Mr. Blandon-Saavedra "used his vehicle to assault two law enforcement officers."[6] Opp. at 3. Moreover, this finding could establish Mr. Blandon-Saavedra's actions were a reasonable response to excessive force by a government agent. See, e.g., United States v. Span, 970 F.2d 573, 577 (9th Cir. 1992) (explaining a defendant may raise an "excessive force theory of defense" to defeat a charge of forcibly assaulting a federal officer); see also United States v. Zaragoza-Moreira, 780 F.3d 971, 978 (9th Cir. 2015) (holding a videotape in a drug trafficking case was potentially useful evidence for supporting the defendant's duress defense).

Accordingly, the HSI Vehicle was potentially useful in establishing Mr. Blandon-Saavedra's defense with respect to Count Two.

**B.   THE GOVERNMENT'S FAILURE TO PRESERVE THE HSI VEHICLE AS EVIDENCE WAS IN BAD FAITH**

**1.   Applicable Law**

"The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." Zaragoza-Moreira, 780 F.3d at 977 (citing Youngblood, 488 U.S. at 56 n.*). "Bad faith exists when the government knew the potentially exculpatory value of the evidence and failed to take steps to preserve it." United States v. Myers, 754 F. Supp. 3d 1063, 1071 (D. Nev. 2024) (citing Zaragoza-Moreira, 780 F.3d at 979-80); see, e.g., United States v. Leal-Del Carmen, 697 F.3d 964, 970 (9th Cir. 2012) ("[I]f the government interviews the witness or has other information suggesting that he could offer exculpatory evidence,

---

[5] The Government also failed to oppose this finding in their Opposition.

[6] The Court notes several other recent cases involving alleged assaults on ICE officers in which the jury acquitted the defendant or the charges were dismissed because, among other things, the evidence showed the officers, in fact, used force first. See, e.g., United States v. Ramos-Brito, No. CR-25-00501-SVW (C.D. Cal. 2025); United States v. Reid, No. 1:25-cr-00244 (D.D.C. 2025); United States v. Quintanilla-Chavez, No. 5:25-cr-00388-XR-1 (W.D. Tex. 2025).

the government may not deport him without first giving defense counsel a chance to interview him."). However, if the government lacks knowledge of the exculpatory value of the evidence, the government is merely "negligent in not preserving the evidence." Sivilla, 714 F.3d at 1172.

### 2.     Analysis

Here, the Government was aware of the exculpatory value of the HSI Vehicle when it completed the repairs. During Mr. Blandon-Saavedra's post-arrest interview hours after the incident, Mr. Blandon-Saavedra told Agent Garcia that Agent Tomaselli and Officer Perera hit him first. See Report at 1. Specifically, in response to Agent Garcia's statement "that the agents were there to discuss the incident that occurred earlier that day," Mr. Blandon-Saavedra told the agents "they hit me." Id. Notably, Agent Garcia included Mr. Blandon-Saavedra's claim in his Report, thereby indicating Agent Garcia understood the significance of this statement. Id.; see, e.g., Myers, 754 F. Supp. at 1072 (finding the inclusion of the defendant's defense in the officer's report was an indication of the officer's knowledge of the potentially exculpatory value of the missing evidence). Therefore, Agent Garcia knew about Mr. Blandon-Saavedra's defense claim and the potentially exculpatory value of the HSI Vehicle from the outset, well before HSI commenced and completed the repairs. Moreover, because Mr. Blandon-Saavedra affirmatively alerted Agent Garcia to his defense claim, Agent Garcia held this knowledge regardless of the "strength of [Mr. Blandon-Saavedra's] defense and whether [Agent Garcia] believed the claim." Zaragoza-Moreira, 780 F.3d at 979.

Despite knowing the significance of the evidence and despite his extensive training and experience in criminal investigations to which he attests in his probable cause statement in support of the Complaint, Agent Garcia failed to take any steps to preserve the HSI Vehicle.[7] Compl. ¶¶ 3-4. Agent Garcia has been employed as a HSI Special Agent since July 2011. Id. ¶ 3. As part of his training, he completed a 13-week Criminal Investigator Training Program and a 13-week ICE Special Agent Training Program at the Federal Law Enforcement Training Center. Id. Throughout his career, Agent Garcia has "participated in numerous investigations and ha[s] conducted or assisted in the arrests of numerous subjects and conducted interviews with victims, witnesses, suspects, and informants." Id. ¶ 4. Given this depth of experience, Agent Garcia surely understood his professional and constitutional duty to preserve potentially exculpatory evidence, especially after Mr. Blandon-Saavedra alerted Agent Garcia to his defense claim. See Zaragoza-Moreira, 780 F.3d at 980 (holding an HSI officer failed to preserve videotape evidence in bad faith where the officer was aware of the potentially exculpatory value of the evidence). Nonetheless, Agent Garcia not only failed to preserve the HSI Vehicle; he omitted any mention of Mr. Blandon-Saavedra's defense claim in his probable cause statement supporting the Complaint. See id. (characterizing an officer's failure to include the defendant's claims of duress in the probable cause statement as "disturbing"). To the extent Agent Garcia doubted Mr. Blandon-Saavedra's claim, that disbelief did not permit Agent Garcia to allow for the bad faith destruction of exculpatory evidence. See Cooper, 983 F.2d at 933 ("[Defendants] should not be made to suffer because government agents discounted their version and, in bad faith, allowed its proof, or its disproof, to be buried in a toxic waste dump.").

---

[7] The HSI photographs taken at the collision site do not establish a good faith effort to preserve the evidence because, as discussed below, the photographs are not comparable to the HSI Vehicle itself.

Similarly, Agent Wolcott became aware of Mr. Blandon-Saavedra's defense claim and the exculpatory value of the HSI Vehicle at the latest on September 9, 2025, when he approved Agent Garcia's Report.  Report at 2.  Like Agent Garcia, Agent Wolcott failed to take any steps to preserve the HSI Vehicle.  Even more concerning, Agent Wolcott had direct knowledge of the repair process and timeline because he was copied on the September 15, 2025 emails in which Agent Spooner-Wyman, Agent Tomaselli, and Mr. Cervantes sought expedited approval for the repairs.  See Ex. 1 at 7-9.  Despite his awareness of the exculpatory value of the HSI Vehicle, Agent Wolcott made no efforts to halt the repairs, instead allowing the repairs to proceed *on an expedited basis*, thereby depriving Mr. Blandon-Saavedra an opportunity to inspect the vehicle.  See Cooper, 983 F.2d at 931 ("The equipment's exculpatory value was apparent to government agents before they, in bad faith, allowed its destruction.").

Finally, the Court is not persuaded by the Government's argument it did not destroy the evidence in bad faith because HSI "followed its own policies" in repairing the HSI Vehicle.  Opp. at 8.  Adherence to standard policies and procedures does not disprove bad faith, and an agency's internal protocols do not justify the bad faith destruction of evidence.  See Cooper, 983 F.2d at 930 (holding an agency acted in bad faith by destroying evidence pursuant to the agency's policies); Zaragoza-Moreira, 780 F.3d at 980 (holding an officer acted in bad faith by failing to preserve a videotape that had been automatically recorded over).  As discussed above, the Government was aware of Mr. Blandon-Saavedra's defense claim and the exculpatory value of the HSI Vehicle before and during the entire time it solicited cost estimates, coordinated internal approvals, tendered payment, and ultimately completed the repairs.  In proceeding with the repairs, the Government at best prioritized administrative expedience and the apparent need to avoid an impending funding cutoff over its constitutional duty to preserve exculpatory evidence.  See Ex. 1.  At worst, the Government intentionally expedited repairs to deny Mr. Blandon-Saavedra his right to inspect and investigate potentially useful evidence.  Under these circumstances, HSI's actions in repairing the HSI Vehicle amounted to "a conscious effort to suppress exculpatory evidence."  Id. at 980 (quoting Trombetta, 467 U.S. at 488).

### C.     THERE IS NO COMPARABLE EVIDENCE

A defendant is entitled to dismissal of the indictment for destruction of evidence where "the missing evidence is 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'"  Sivilla, 714 F.3d at 1172 (quoting Trombetta, 467 U.S. at 489).  Here, the photographs taken by HSI are not comparable in value to the HSI Vehicle itself for Mr. Blandon-Saavedra's defense claim.  The photographs depict (1) the positions of Mr. Blandon-Saavedra's car and the HSI Vehicle after the collision, and (2) the damage to both vehicles.  See generally Ex. 3.  Therefore, at most, the photographs merely confirm (1) Mr. Blandon-Saavedra's car and the HSI Vehicle collided with one another, and (2) both vehicles sustained damage from the collision.  See id.

An examination of the HSI Vehicle before it was repaired was necessary to properly investigate and provide evidence and testimony regarding which vehicle hit the other first.  As Mr. Blandon-Saavedra's counsel asserts in a declaration, the "photographs cannot capture three-dimensional deformation, crush depth, transfer marks, or other impact-related characteristics, nor can they provide the precise measurements required for a complete and accurate reconstruction."  Sarsour Decl. ¶ 6.  Rather, "a physical inspection is necessary to evaluate the vehicle's crush profiles, paint transfer, deformation patterns, and mechanical damage angles in order to determine direction,

force, and sequence of impact." Id. ¶ 5.  Accordingly, in the context of the Government's allegations and Mr. Blandon-Saavedra's asserted defense claim, the Court finds there is no reasonably available comparable evidence to the unrepaired HSI Vehicle.  See, e.g., Sivilla, 714 F.3d at 1174 (holding photographs were not comparable evidence where the defendant's expert "would have needed access to the vehicle itself" to support the defendant's only defense); Cooper, 983 F.2d at 932 (holding photographs were not comparable to physical evidence where an expert would need to examine the physical evidence to make a "firm determination").

*****

Thus, because the Government's failure to preserve the HSI Vehicle as evidence was in bad faith without alternative comparable evidence, Mr. Blandon-Saavedra was deprived of the opportunity to present a complete defense.  Accordingly, Mr. Blandon-Saavedra has established a violation of his right to due process and is entitled to dismissal of Count Two with prejudice.[8]  See Cooper, 983 F.2d at 932 (holding dismissal of the indictment, not suppression of evidence, was the proper remedy for a due process violation from destruction of evidence).

**D.    RULE 16**

**1.    Applicable Law**

Under Rule 16, the government must permit a defendant to inspect, among other items, "tangible objects . . . if the item is within the government's possession, custody, or control" and the item is "material to preparing the defense" or "the government intends to use the item in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E).  "Rule 16 'grants criminal defendants a broad right to discovery[.]'" United States v. Muniz-Jaquez, 718 F.3d 1180, 1183 (9th Cir. 2013).  Materiality under Rule 16 is a "low threshold" and is satisfied so long as the evidence helps a defendant "prepare a defense." United States v. Hernandez-Meza, 720 F.3d 760, 768 (9th Cir. 2013)).  "[W]hen the government fails to comply with preservation requests and allows evidence to be destroyed, it likely runs afoul of its discovery disclosure requirements under [Rule 16]." See Zaragoza-Moreira, 780 F.3d at 981.

**2.    Analysis**

Here, the Court notes the Government also appears to have violated Rule 16 in failing to preserve the HSI Vehicle.  The HSI Vehicle is clearly material to preparing Mr. Blandon-Saavedra's defense.  As the Government counsel conceded at the November 10, 2025 hearing, she "never asked" the HSI agents to preserve the HSI Vehicle or took any other action to ensure the preservation of the HSI Vehicle.  Nonetheless, the Government argues it was not obligated to preserve the HSI Vehicle because Mr. Blandon-Saavedra did not specifically request the

---

[8] In what appears to be a growing pattern of mishandling of evidence, this case joins at least two other recent cases in which physical evidence from a vehicle collision where the defendant is alleged to have assaulted ICE officers with a car after being boxed in was lost or otherwise destroyed.  See United States v. Martinez, No. 1:25-cr-00636 (N.D. Ill. 2025); United States v. Castillo-Ortega, No. EDCR-25-00261-JGB-1 (C.D. Cal. 2025).

Government to do so.[9]  Opp. at 9.  As an initial matter, Mr. Blandon-Saavedra's counsel did, in fact, "specifically request[] preservation of . . . physical evidence that may be destroyed, lost, or otherwise put out of possession, custody, or care of the government."  Ex. A at 6.  Moreover, nothing in Rule 16 requires a defendant to request preservation of individual pieces of evidence.  Rather, Rule 16 is "written in categorical terms: Upon defendant's request, the government must disclose any documents or other objects within its possession, custody or control that are 'material to preparing the defense.'"  Hernandez-Meza, 720 F.3d at 768 (quoting Fed. R. Crim. P. 16(a)(1)(E)(i)).  "Lack of knowledge or even a showing of due diligence" does not excuse non-compliance.  Id.  Hence, the Government's failure to preserve the HSI Vehicle likely violated Rule 16.[10]

## V.
## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion with respect to Count One and **GRANTS** the Motion with respect to Count Two.  Count Two of the Indictment is hereby **DISMISSED WITH PREJUDICE**.[11]

**IT IS SO ORDERED.**

---

[9] The Government also contends the HSI Vehicle was no longer in its custody when HSI sent it to the repair shop between September 16, 2025 and October 29, 2025.  Opp. at 9.  This argument is unconvincing.  As an initial matter, HSI had not yet sent the HSI Vehicle to a repair shop when Mr. Blandon-Saavedra's counsel sent the discovery letter on September 8, 2025.  More importantly, the Government's argument contravenes common sense; the Government did not give up "possession, custody, or control" over the HSI Vehicle merely by sending it to a repair shop.  Fed. R. Crim. P. 16(a)(1)(E).

[10] While the Government's failure to preserve the HSI Vehicle or take any other action to preserve evidence in response to the defense counsel's discovery demand letter is concerning, the Court need not decide whether the prosecution's actions, or lack thereof, separately constitute a due process violation.  See Zaragoza-Moreira, 780 F.3d at 981 ("[N]on-compliance with Rule 16 does not amount to a due process violation absent bad faith.").  Moreover, because the Court finds Mr. Blandon-Saavedra is entitled to dismissal of Count Two with prejudice due to the Government's violation of his right to due process, the Court need not determine what remedies to grant for the Government's likely violation of Rule 16.

[11] As mentioned above, the ERO Vehicle relevant to Count One remains unrepaired and available for inspection.  Mr. Blandon-Saavedra has not demonstrated the HSI Vehicle was material exculpatory evidence or potentially useful evidence with respect to Count One, which involves his collision with the ERO Vehicle.  Accordingly, Mr. Blandon-Saavedra has not established the Government's repair of the HSI Vehicle constitutes a due process violation as to Count One.